**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, | |
| *Plaintiffs*, | Civil Action No.: 1:24-cv-04609 |
| v. | |
| NUWBER, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities | |
| *Defendants*. | |

**DEFENDANT NUWBER, INC.'S OPPOSITION**
**TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

<u>**TABLE OF CONTENTS**</u>

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

LEGAL STANDARD ............................................................................................ 5

ARGUMENT ...................................................................................................... 5

I.    Plaintiffs' Motion Improperly Seeks Sweeping Discovery Based On Flawed Personal Jurisdiction Theories. ................................................. 5

A.    Plaintiffs Are Not Entitled To More Discovery Based On The *Calder* Effects Test Because Plaintiffs' Complaint Did Not Plead an Intentional Tort. ..................................................... 5

B.    Plaintiffs Are Not Entitled To More Discovery Based On The Purposeful Availment Test Because Plaintiffs Have Already Received All That Is Relevant. ......................................... 8

C.    The Remaining Discovery Requests At Issue Go Far Beyond the Permissible Scope of Discovery. ......................... 9

II.    Nuwber Has Provided Detailed Responses To Nearly All Of Plaintiffs' Requests And The Remaining Requests At Issue Are Improper. ..................... 10

CONCLUSION .................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas Data Privacy Corp. v. We Inform, LLC*,
 758 F. Supp. 3d 322 (D.N.J. 2024) ................................................................3

*Barton v. RCI, LLC*,
 2013 WL 1338235 (D.N.J. Apr. 1, 2013) ..............................................5

*Blazovic v. Andrich*,
 124 N.J. 90 (1991) ..............................................................................6

*Briskin v. Shopify, Inc.*,
 135 F.4th 739 (9th Cir. 2025) ..............................................................7

*Hasson v. FullStory, Inc.*,
 114 F.4th 181 (3d Cir. 2024)..................................................6, 7, 8

*Hepp v. Facebook*,
 14 F.4th 204 (3d Cir. 2021) ..............................................................9

*Marten v. Godwin*,
 499 F.3d 290 (3d Cir. 2007)..........................................................6

*Remick v. Manfredy*,
 238 F.3d 248 (3d Cir. 2001)..........................................................6

*Schuchardt v. President of the United States*,
 839 F.3d 336 (3d Cir. 2016).........................................................5

*Shuker v. Smith & Nephew, PLC*,
 885 F.3d 760 (3d Cir. 2018).....................................................5, 10

*Thomas v. Papa John's Int'l, Inc.*,
 No. 24-3557, 2025 WL 1704437 (9th Cir. 2025) ....................7

*Walden v. Fiore*,
 571 U.S. 277 (2014)..........................................................................8

**Rules**

Fed. R. Civ. P. 26.....................................................................................5

Fed. R. Civ. P. 26(b)(1).............................................................. *passim*

**Other Authorities**

*Restatement (Second) of Torts* § 8A comment b (1965).................................................................6

Defendant, Nuwber, Inc. ("Nuwber"), by counsel, hereby respectfully submits this Opposition to Plaintiffs' motion to compel personal jurisdiction discovery (the "Motion").

## INTRODUCTION

Because Nuwber has no presence in New Jersey and did not ever target or commit any act in New Jersey, Plaintiffs cannot establish specific personal jurisdiction under the traditional purposeful availment test. Because Plaintiffs apparently realize this, they have chosen to pivot. Plaintiffs now argue that their Complaint must be interpreted to have alleged intentional torts by Nuwber, that Nuwber is therefore subject to suit here under the *Calder* effects test, and that Plaintiffs are therefore entitled to broad, sweeping discovery to demonstrate the same.

Nuwber disagrees. The *Calder* effects test cannot apply because Plaintiffs' Complaint alleges failure to timely respond to Daniel's Law requests, it does not allege that Nuwber committed any intentional torts, and there could be no good faith factual basis for any amendment alleging that Nuwber intended to harm anyone. Moreover, even if the *Calder* effects test could possibly apply, Plaintiffs identify no authority supporting that a plaintiff is entitled to full-blown merits discovery when trying to invoke the *Calder* effects test.

In an effort at compromise, Nuwber has nevertheless now supplemented its response to each discovery request at issue, making Plaintiffs' Motion largely moot. It appears that all that remains is Plaintiffs' demand for production of (i) information about anyone who has ever worked with Nuwber outside of New Jersey, (ii) copies of all removal requests that Nuwber ever received citing Daniel's Law, and (iii) all documents relating to Nuwber's business or information subject to Daniel's Law. These requests far exceed the bounds of Rule 26(b)(1). Because Plaintiffs have received more than sufficient discovery to make whatever personal jurisdiction argument they believe they have, Plaintiffs' Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Nuwber operates a people search website, https://nuwber.com, that allows subscribers to obtain publicly available information about adult U.S. residents. Nuwber has always been a small company and had less than $1,000,000 in total U.S. revenue from subscribers since January 2024. While its website is accessible nationwide, Nuwber has never targeted or had any employees, agents, offices, or assets in New Jersey. It does no advertising and instead all visitors to https://nuwber.com arrive through organic traffic. Because Nuwber respects personal privacy, Nuwber always made it easy and free for people to obtain the removal of information about them, simply by clicking the "Remove My Info" or "Do Not Sell My Info" links on the website's home page and completing the form found at https://nuwber.com/removal/link.

Nuwber only learned about the requirements of Daniel's Law during the 2023 holidays season, when Atlas began sending thousands of emails making Daniel's Law requests, many of which contained merely a first and last name without sufficient information for Nuwber to comply with their request. Throughout January and February 2024, Nuwber sent several emails to Atlas and its users requesting additional information and cooperation so Nuwber could better ascertain the identity of the person making the request and thereby satisfy the request. Neither Atlas nor its users responded. Nevertheless, Nuwber acted as promptly and diligently as possible to comply with all requests.

Rather than respond to Nuwber's emails, Plaintiffs filed their Complaint against Nuwber on February 7, 2024. Plaintiffs' Complaint did not allege that Nuwber committed an intentional tort, but that Nuwber failed to comply with Daniel's Law because Nuwber allegedly did not remove Plaintiffs' information within ten (10) days of receiving a Daniel's Law request. The only allegations concerning personal jurisdiction were (1) that "the parties reside and/or conduct business in New Jersey, along with the Covered Persons" and (2) that "the unlawful actions

2

complained of herein occurred in New Jersey." *Atlas Data Privacy Corp., et al. v. Nuwber, Inc., et al.*, CA No. 1:24-cv-04609-HB ECF No. 1-1, ¶ 36. As such, Defendants' Consolidated Motion to Dismiss on Personal Jurisdiction, which Nuwber joined on March 18, 2025, explained that Plaintiffs could not support specific personal jurisdiction based on the traditional purposeful availment test since Nuwber, *inter alia*, did not target or commit any act in New Jersey. *See Atlas Data Privacy Corp., et al. v. GoHunt LLC, et al.,* CA No. 1:24-cv-04380-HB, ECF No. 42-1 at p. 14-15; *Nuwber, Inc., et al.*, ECF No. 47 at p. 4. In a footnote, Defendants correctly observed that Plaintiffs' Complaint did not allege any intentional tort and thus the *Calder* effects test did not apply. *GoHunt LLC, et al.,* ECF No. 42-1 at p. 12 n. 9.

On April 14, 2025, the Court issued an opinion interpreting Daniel's Law. *Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 341 (D.N.J. 2024). The Court explained "Plaintiffs and the New Jersey Attorney General counter that the standard of liability is negligence [and] take the position that plaintiffs must prove that defendants acted unreasonably in failing to take down the requested home addresses and unlisted phone numbers." *Id.* at 339. Consistent with Plaintiffs' pleading and argument, the Court did not hold that violation of Daniel's Law requires proof of an intentional tort, but rather requires proof of negligence. *Id.* at 341. Specifically, the Court explained "Daniel's Law does not mandate a specific intent standard of liability . . . [and t]he inclusion of a negligence standard of liability for actual or liquidated damages is a reasonable construction of Daniel's Law, avoids absurd results, is consistent with analogous New Jersey privacy law, and saves the law from constitutional repugnancy." *Id.*

On April 14, 2025, Plaintiffs served sixteen (16) interrogatories and twenty-three (23) document requests on Nuwber. On May 14, 2025, Nuwber served its written objections and responses to each. On June 4, 2025, Plaintiffs' counsel sent an omnibus "deficiency" letter to

counsel for Nuwber and twelve (12) other defendants.  As with Plaintiffs' Complaint and prior argument, this letter made no mention of alleged intentional torts or the *Calder* effects test.  On June 9, 2025, Plaintiffs' counsel conducted a group "meet and confer" with counsel for Nuwber and several other defendants.  It was then – for the very first time – that Plaintiffs' counsel asserted that they had somehow alleged intentional torts and therefore the *Calder* effects test applied.

Plaintiffs' counsel reiterated their new intentional tort and personal jurisdiction theory in a June 11, 2025 "meet and confer" just with Nuwber's counsel.  In an effort at compromise, Nuwber's counsel explained it would consider supplementing many responses, but that several of Plaintiffs' requests went far beyond issues of personal jurisdiction and far beyond the scope of Rule 26(b)(1).  The proposal went one-way, as Plaintiffs' counsel refused to narrow any requests.  Nevertheless, contemporaneous with this filing, and attached as Exhibits A and B hereto, Nuwber has now provided Nuwber's Supplemental Responses to Plaintiffs' Interrogatories and Nuwber's Supplemental Responses to Plaintiffs' Document Requests.

What remains is far beyond the scope of Rule 26(b)(1), especially as it relates to jurisdictional discovery.  As to information about all persons who have ever supported Nuwber outside of New Jersey, this is not relevant to any personal jurisdiction inquiry.  As to copies of all removal requests that Nuwber ever received citing Daniel's Law, this is also not relevant to any personal jurisdiction inquiry and ignores the reality that Atlas already has copies of the requests it sent.  As to all internal communications that Nuwber has ever had about its business or any information subject to Daniel's Law, this is disproportionate and unduly burdensome especially since it concerns the entirety of Nuwber's business and is wholly overlapping and indistinguishable with merits discovery.  At bottom, Plaintiffs have received all the discovery

4

appropriate, and then some, to attempt whatever argument they believe they have as to personal jurisdiction.

## **LEGAL STANDARD**

Plaintiffs advance an outdated legal standard when describing the scope of discovery. Although Plaintiffs rely upon *Barton v. RCI, LLC*, 2013 WL 1338235 (D.N.J. Apr. 1, 2013), it was decided before the 2015 amendments to Rule 26 and also did not concern jurisdictional discovery. As such, Plaintiffs do not explain how their discovery requests are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). Further, Plaintiffs overlook the Third Circuit's admonition that "[j]urisdictional discovery 'is not a license for the parties to engage in a fishing expedition'" and district courts "should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (quoting *Schuchardt v. President of the United States*, 839 F.3d 336, 353-54 (3d Cir. 2016)). Applying the proper legal standard, Plaintiffs' Motion should be denied.

## **ARGUMENT**

I.    **Plaintiffs' Motion Improperly Seeks Sweeping Discovery Based On Flawed Personal Jurisdiction Theories.**

      A.    **Plaintiffs Are Not Entitled To More Discovery Based On The *Calder* Effects Test Because Plaintiffs' Complaint Did Not Plead an Intentional Tort.**

Plaintiffs' Motion attempts to embellish, if not transform, their Complaint to argue that a violation of Daniel's Law is an intentional tort and therefore Nuwber was actually sued for intentional torts. The reason is obvious. Because Nuwber is not subject to specific personal

5

jurisdiction based on the traditional purposeful availment test, Plaintiffs are trying to take a purported negligence case and now pretend it has always been an intentional tort case, so they can argue the *Calder* effects test applies. But this is contrary to what was actually alleged in Plaintiffs' Complaint, contrary to what was previously argued by Plaintiffs, and contrary to how the Court previously interpreted Daniel's Law. Plaintiffs' new unpled personal jurisdiction theory is also belied by common sense and the law.

The *Calder* effects test is an alternative basis for personal jurisdiction in cases involving intentional torts. It "requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001). "The effects test prevents a defendant from being haled into a jurisdiction . . . if the defendant did not expressly aim *its conduct* at the state." *Id.* at 191 (*Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007). Under New Jersey law, an intentional tort requires intent to harm, *i.e.*, "To act intentionally involves knowingly or purposefully engaging in conduct 'substantially certain' to result in injury to another." *See Blazovic v. Andrich*, 124 N.J. 90, 107 (1991) (quoting *Restatement (Second) of Torts* § 8A comment b (1965)). Plaintiffs' Complaint alleges no such express aiming or intent to harm. Nor could it.

Plaintiffs try to transform their Complaint, arguing "Defendant intentionally disclosed, re-disclosed, or otherwise made available the protected information of a covered person – and did so with knowledge that disclosure would violate the rights of a New Jersey resident and expose them to threats, violence, and harassment in New Jersey." *Nuwber, Inc., et al.*, ECF No. 68 at p. 4. But Plaintiffs' Complaint never once used the words "intentional" or "intentionally"

6

and there is no allegation that Nuwber intended to violate Daniel's Law, intended to harm anyone, or intentionally disclosed someone's information knowing they were substantially certain to be harmed. Rather, the Complaint alleges that Nuwber was liable for failing to remove information within ten (10) days of a Daniel's Law request. This cannot be transformed into an intentional tort. Plaintiffs' Motion seeks to obtain personal jurisdiction discovery on Nuwber as if it pled an intentional tort, while seeking liability against Nuwber on merely a negligence standard.

Finally, Plaintiffs' Motion gives short shrift to *Hasson v. Fullstory, Inc*., 114 F.4th 181 (3d Cir. 2024).[1] This was a consolidated appeal of two cases each pertaining to websites that used data collection software, known as the Session Replay Code, to collect personal information about website users allegedly in violation of Pennsylvania's Wiretapping and Electronic Surveillance Act. The Third Circuit analyzed whether the defendants, one a software provider called Full Story that was used by a mattress company, and the other the Papa John's pizza company, were subject to personal jurisdiction based on the *Calder* effects test. *Id.* at 187-88. Analyzing its requirements, the Third Circuit focused heavily on the "express aiming" prong and emphasized "'jurisdiction over an out-of-state intentional tortfeasor must be based on intentional

---

[1]    Plaintiffs' reliance on *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025), to justify discovery under the *Calder* effects test is misplaced. The Ninth Circuit holds that the *Calder* effects test "express aiming" prong is satisfied based solely on a defendant's knowledge that forum residents might be harmed by its conduct, without any evidence that the defendant expressly aimed its conduct at the forum state. *Briskin*, 135 F.4th at 757. This decision is in sharp contradiction with this Circuit's holding in *Hasson*, which held that "while a defendant's knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, that alone is insufficient to satisfy the targeting prong of the effects test." 114 F.4th at 196. This split is evident in *Thomas v. Papa John's Int'l, Inc.*, where the Ninth Circuit, faced with the same facts as in *Hasson* and in reliance of *Briskin*, found the express aiming prong satisfied based solely on Papa John's awareness that Californians used its website. *Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 WL 1704347, at *1 (9th Cir. 2025). Plaintiffs thus invoke non-binding case law that contradicts controlling Third Circuit precedent to justify their overbroad discovery requests.

conduct *by the defendant* that creates the necessary contacts with the forum,' not the 'unilateral activity of a plaintiff.'" *Hasson*, 114 F.4th at 196 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

The Third Circuit recognized that Papa John's had "(1) deployed Session Replay Code into the forum and harmed Pennsylvanians there; (2) allows website users to filter restaurant locations geographically; and (3) operates 85 restaurants and conducts other business activities in the Commonwealth." *Id.* at 191. The Third Circuit likewise recognized that FullStory had partnered with Pennsylvania companies and knew that those companies conducted business in the forum, and "received communications intercepted from Pennsylvanians while they were in Pennsylvania and commercialized Pennsylvanians geographical data by sending it to website operators in an analytically useful way." *Id.* at 195-96. Nonetheless, because plaintiffs could not satisfy the "express aiming" element, the Third Circuit held that plaintiffs could not establish personal jurisdiction against either under the *Calder* effects test.

As compared to the facts in *Hasson*, the facts here confirm even more that *Calder* does not apply. By any measure, the conduct at issue began with Plaintiffs reaching out of New Jersey to communicate with Nuwber and not the other way around. Thus, Plaintiffs' Complaint alleges no intentional tort and likewise alleges no express aiming. Because Plaintiffs' Complaint does not allege personal jurisdiction based on the *Calder* effects test, it would not apply in any event, and the discovery requests at issue exceed the bounds of Rule 26(b)(1), Plaintiffs' Motion should be denied.

**B.    Plaintiffs Are Not Entitled To More Discovery Based On The Purposeful Availment Test Because Plaintiffs Have Already Received All That Is Relevant.**

As set forth in Defendants' Consolidated Motion to Dismiss on Personal Jurisdiction, Plaintiffs also cannot establish specific personal jurisdiction under the traditional purposeful

availment test.  *See GoHunt LLC.,* ECF No. 42-1 at p. 14-15; *Nuwber, Inc.*, ECF No. 47 at p. 4).

As explained in Nuwber's accompanying declaration, Nuwber is a corporation organized under

Virginia law and is neither incorporated nor registered to do business in New Jersey.  *Nuwber,*

*Inc.,* ECF No. 47 at p. 2.  While its website is generally accessible, it does not target New Jersey

as a market for its products or services, and it does not tailor any aspect of its business to New

Jersey consumers.  *Id.* at 3.  Together, Nuwber's discovery responses served May 14, 2025, and

now the supplemental responses served this date provide additional information to Plaintiffs,

again confirming that Nuwber took no "deliberate act reaching out to do business" in New

Jersey.  *Hepp v. Facebook*, 14 F.4th 204, 207 (3d. Cir. 2021).  Because Nuwber has already

received all discovery relevant to the purposeful availment test and the remaining discovery

requests at issue exceed the bounds of Rule 26(b)(1), Plaintiffs' Motion should be denied.

### C.    The Remaining Discovery Requests At Issue Go Far Beyond the Permissible Scope of Discovery.

The issue raised by Plaintiffs' Motion is not whether personal jurisdiction discovery is

appropriate, but whether the breadth and burden of the remaining discovery requests at issue is

appropriate.  It is not.  Plaintiffs provide no support for their contention that they are entitled to

near-limitless, merits-based discovery merely because the Court allowed personal jurisdiction

discovery.  Indeed, there is no discussion in *Hasson* indicating that Papa John's or Full Story

were required to produce the names and addresses of all of their personnel, all of their

communications from consumers, or all of their documents about their business.  There, as here,

such requests would not be "proportional to the needs of the case, considering the importance of

the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed.R.Civ.P. 26(b)(1).  Again, "jurisdictional discovery is not a license for the parties to engage in a fishing expedition." *Shuker*, 885 F.3d at 782 n. 20.  Because this what the requests at issue are, Plaintiffs' Motion should be denied.

## II.    Nuwber Has Provided Detailed Responses To Nearly All Of Plaintiffs' Requests And The Remaining Requests At Issue Are Improper.

For the Court's convenience, Nuwber has grouped Plaintiffs' interrogatories and document requests by category below and summarized the information produced by Nuwber in response to each.

### *Nuwber's Background and Services*
### *(Interrogatory No. 1; RPD No. 18)*

**INTERROGATORY NO. 1**:[2] Identify any product, service, or digital platform that Defendant has since December 1, 2023, owned, licensed, or otherwise offered and that has published, provided access to, or otherwise made available the home addresses and/or telephone numbers of New Jersey residents.

**RPD NO. 18**: All documents reflecting or relating to the number of individuals with New Jersey addresses in any and all databases or on any sites that Defendant utilizes in connection with any product or services.

Nuwber has provided detailed and thorough responses.  Nuwber's May 14, 2025 responses explained that all information about Nuwber's products and services is fully described on Nuwber's website and that Nuwber had information about approximately 8,055,517 individuals associated with New Jersey.  Nuwber's supplemental responses now include several screenshots and additional narrative about Nuwber's products and services that appear on Nuwber's website, as well as explain that "Nuwber's website makes available information about the vast majority of adult U.S. residents, including New Jersey residents, other than persons who have submitted removal requests which can be easily done via https://nuwber.com/removal/link."

---

[2]    With their June 13, 2024 deficiency letter, Plaintiffs did not raise any concern with Nuwber's response to Interrogatory No. 1; however, Plaintiffs' Motion now asserts that the response was deficient.

Nuwber produced the information requested.

### Nuwber's NJ Revenue Information
### (Interrogatory No. 2; RPD Nos. 2, 3, 19, 20)

**INTERROGATORY NO. 2**: For each product, service, or digital platform identified in response to Interrogatory Number 1, provide information regarding all access, purchase, or use of the product since December 1, 2023, by anyone in New Jersey.

**RPD NO. 2**: All documents reflecting or relating to Defendant's revenues, profits, or income derived from any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation for products or services offered in New Jersey or to New Jersey customers.

**RPD NO. 3**: All documents reflecting or relating to Defendant's share of revenues, profits, or income derived from activities in New Jersey and any other state reflecting the state in which the activities generating the revenues, profits, or income occurred.

**RPD NO. 19**: All documents reflecting or relating to the products or services that Defendant has delivered or otherwise made available to businesses and individuals with information that includes New Jersey addresses, and the total amount and percentage of Defendant's revenue from those services or products.

**RPD NO. 20**: All documents reflecting or relating to the businesses and individuals in the state of New Jersey that have received products or services from Defendant, and the total amount and percentage of revenue Defendant has earned from those businesses and individuals.

Nuwber has provided detailed and thorough responses. Nuwber's May 14, 2025 responses correctly explained that, because Nuwber's checkout page does not collect the addresses of subscribers to https://nuwber.com and because its web server access logs do not identify a person's geographic location, Nuwber did not possess information about the number of Nuwber subscribers or amount of revenue associated with New Jersey. However, Nuwber's supplemental responses now include information recently obtained from Nuwber's payment processor, Stripe, Inc., as well as PayPal.

As explained therein, Stripe, Inc. has provided Nuwber with the following information regarding the number of transactions and revenue generated in connection with consumer subscriptions purchased via credit card:

11

**2023 Credit Card Transactions and Revenue:**
NJ: 2,122 transactions and $42,905 revenue
Total U.S.: 65,206 transactions and $1,179,740 revenue
NJ transactions were 3.25% of the total transactions and 3.63% of total revenue

**2024 Credit Card Transactions and Revenue:**
NJ: 1,136 transactions and $21,490 in revenue
Total U.S.: 37,267 transactions and $663,371 in revenue
NJ transactions were 3.04% of the total transactions and 3.24% of total revenue

**YTD Credit Card Transactions and Revenue:**
NJ: 362 transactions and $6,761 in revenue
Total U.S.: 8,491 transactions and $164,946 revenue
NJ transactions were 4.26% of the total transactions and 4.01% of the total revenue.

In addition, while not state or New Jersey specific, PayPal has provided Nuwber with the following information regarding the total U.S. revenue generated in connection with consumer subscriptions purchased via PayPal:

**2023 PayPal Related Revenue:**
Total U.S.: $17,964

**2024 PayPal Related Revenue:**
Total U.S.: $9,219

**YTD PayPal Related Revenue:**
Total U.S.: $4,011

Nuwber produced the information requested.

***Nuwber's Officers, Directors, Employees, Contractors, Vendors, or Other Individuals***
***(Interrogatories Nos. 3, 5, 8, 11; RPD Nos. 1(c), 6, 8)***

**INTERROGATORY NO. 3**: Identify all officers, directors, employees, contractors, vendors, and any other individuals or entities who, on Defendant's behalf, have since December 1, 2023, been involved in any marketing, advertising, soliciting, or offering of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.

**INTERROGATORY NO. 5**: Identify all officers, directors, employees, contractors, vendors, and any other individuals or entities who, on Defendant's behalf, have since December 1, 2023, been involved in any marketing, advertising, soliciting, or offering of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.

12

**INTERROGATORY NO. 8**: Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023.

**INTERROGATORY NO. 11**: State whether Defendant has, within the last 5 years, entered into any contract executed within the State of New Jersey or to be performed in whole or in part within New Jersey.

**RPD NO. 1(c)**: All documents reflecting or relating to Defendant's contracts, agreements, or arrangements with any company or individual in New Jersey (including without limitation New Jersey agencies, professionals, vendors, or customers) for the provision of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law.

**RPD NO. 6**: All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity.

**RPD NO. 8**: All documents reflecting or relating to Defendant's relationship, affiliation, or connection with any related entity, including but not limited to any agreements, contracts, joint ventures, partnerships, or common ownership or control, with operations in New Jersey.

Nuwber has provided detailed and thorough responses. Nuwber's May 14, 2025 responses identified that Nuwber has never had any officers, directors, employees, contractors, vendors, other agents, related entities, or contracts to be performed in New Jersey. Nuwber's May 14, 2025 responses also identified that Ms. Tatiana Borodia is Nuwber's President, Chief Executive Officer, Secretary, Treasurer, and Chairman of the Board. Nuwber's May 14, 2025 responses further identified Nuwber's four vendor relationships, while explaining that none of these businesses reside or have a principal place of business in New Jersey.[3]

During the June 11, 2025 meet and confer, Plaintiffs' counsel questioned how Nuwber knew that those businesses were not in New Jersey. Therefore, Nuwber's supplemental responses explain that it confirmed that these businesses "are not entities with principal places of

---

[3]    Because the information is competitively sensitive, Nuwber has redacted the names of these four entities from Nuwber's Supplementary Responses to Plaintiffs' First Set of Interrogatories publicly filed as Exhibit A.

business in New Jersey, as evidenced by their Better Business Bureau online business profiles, available at www.bbb.org." Nuwber's supplemental responses also note "Nuwber's agreements with its users may be found at https://nuwber.com/terms and http://nuwber.com/policy."

The reality is that Nuwber does nothing in New Jersey and has worked with no one in New Jersey.  Trying to avoid this inescapable fact and find something, Plaintiffs assert that Nuwber must nevertheless identify all of its employees, contractors, and other agents wherever located.  Plaintiffs' request is far beyond the scope of Rule 26(b)(1) and personal jurisdiction discovery.

### *Nuwber's Advertising and Marketing Efforts*<br>*(Interrogatory No. 4, RPD No. 1(b))*

**INTERROGATORY NO. 4**: Identify any advertising or marketing activities conducted by Defendant or anyone acting on Defendant's behalf in New Jersey, including nationwide or multistate marketing activities that included marketing or advertising in New Jersey.

**RPD NO. 1(b)**: All documents reflecting or relating to Defendant's marketing, advertising, soliciting, or offering of any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers.

Nuwber has provided detailed and thorough responses.  Nuwber's May 14, 2025 responses explained that Nuwber's website https://nuwber.com is accessible worldwide and in the U.S., but Nuwber has never targeted any advertising or marketing activities to New Jersey, and therefore Nuwber has no responsive documents.  Nuwber's supplemental responses further explain that "Nuwber does not conduct any marketing or advertising activities and instead all visitors to https://nuwber.com arrive through organic traffic."  Here again, Nuwber produced the information requested.

### *Nuwber's Knowledge of Daniel's Law or Other New Jersey Laws*<br>*(Interrogatory No. 7, RPD Nos. 7(a), 7(b), 10, 11, 12, 13, 16, 21)*

**INTERROGATORY NO. 7**: Identify any audit, review, or evaluation of Defendant conducted since December 1, 2023 by any officers, directors, employees, contractors, vendors, and other

individuals or entities acting on Defendant's behalf for compliance with New Jersey law for any of Defendant's services, products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law.

**RPD NO. 7(a)**: All documents reflecting or relating to Defendant's policies, procedures, or practices for Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity.

**RPD NO. 7(b)**: All documents reflecting or relating to Defendant's policies, procedures, or practices for Handling information related to New Jersey residents.

**RPD NO. 10**: Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA"), the New Jersey Identity Theft Prevention Act ("NJITPA"), the New Jersey Fair Credit Reporting Act ("NJFCRA"), or any other New Jersey state law or regulation.

**RPD NO. 11**: Any and all documents reflecting or relating to any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law for any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law.

**RPD NO. 12**: Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of Defendant's websites identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law.

**RPD NO. 13**: Any and all documents reflecting or relating to any internal or external communications, correspondence, or discussions by Defendant or any other related entity regarding the introduction and passage of Daniel's Law in New Jersey, including the applicability, scope, and effect of the law.

**RPD NO. 16**: All documents reflecting or relating to any changes to Defendant's processes regarding Daniel's Law nondisclosure requests or any other requests to remove personal information of New Jersey residents.

**RPD NO. 21**: All documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations, including but not limited to Daniel's Law, NJITPA, and NJFRCA.

Nuwber has provided detailed and thorough responses. Nuwber initially objected to these requests because the requests do not address activities by Nuwber in New Jersey, *i.e.*, the requests are not relevant to the purposeful availment test. Still, Nuwber's May 14, 2025

15

responses described that Nuwber has always made it easy for people to obtain removal of their

information irrespective of any state law requirements.  Nuwber's May 14, 2025 responses

explain "Defendant's website includes a "Remove My Info" page which may be found at

https://nuwber.com/removal/link through which persons can request and cause their information

to no longer be available on Defendant's website, and Defendant strives to make this process as

simple and transparent as possible as shown at https://nuwber.com/faq."  In response to

Document Request No. 16, regarding any changes to Nuwber's processes for removing

information in response to someone's request, Nuwber correctly explained it that it had no

responsive documents.

 In its supplemental responses, Nuwber provides additional information.  As to Document

Request No. 13, concerning the introduction and passage of Daniel's Law, Nuwber explains

"Nuwber only came to learn about Daniel's Law in late-2023 when it received the Atlas requests

and has located no documents responsive to this Request."  With respect to Interrogatory No. 7,

concerning any audit for compliance with Daniel's Law, Nuwber explains:

> Nuwber did not conduct any formal audit or review for compliance with
> Daniel's Law. However, Nuwber has always respected personal privacy and
> made it easy for a person to request and obtain the removal of information about
> them.
>
> Upon receipt of a request, including through its "Remove My Information"
> dashboard found at https://nuwber.com/removal/link or otherwise, Nuwber's
> practice has consistently been to verify that sufficient information was received
> to complete the request and to then promptly remove the information requested.
>
> A person may easily (and for free) remove their information by following the
> instructions shown below:

Persons who send a request to support@nuwber.com are likewise directed to the removal feature shown above and are offered assistance if they have any difficulties. Provided that a person uses the removal feature, which provides Nuwber with sufficient information to identify the person who seeks to have their information removed, Nuwber is able to remove that person's information within twenty-four (24) hours.

With respect to Document Request Nos. 7(a), 7(b), and 12, Nuwber again explains that its practice is that described on the website's homepage, https://nuwber.com/removal/link and Nuwber incorporates its supplemental response to Interrogatory No. 10 which (as discussed below) describes Nuwber's response to the Atlas-related Daniel's Law requests. With respect

17

to Document Requests Nos. 10 and 21 which address various New Jersey consumer protection statutes and any modification to Nuwber's processes in light of those statutes, Nuwber correctly explains that it has located no non-privileged documents responsive to the requests. This is because Nuwber has always processed removal requests as diligently and quickly as possible. Again, Nuwber produced the information requested.

### Nuwber's Receipt and Response to Daniel's Law Requests
### (Interrogatory Nos. 9, 10, RPD Nos. 1(d), 5, 14, 15)

**INTERROGATORY NO. 9**: Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers.

**INTERROGATORY NO. 10**: Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or more after Defendant received a nondisclosure request from a person asserting a right to nondisclosure under Daniel's Law, including any address or phone number of a New Jersey resident that is currently available in the database of information associated with any of Defendant's products, services, or digital platforms.

**RPD NO. 1(d)**: All documents reflecting or relating to Defendant's involvement, participation, or role in the collecting, publishing, disseminating, selling, or providing access to, or otherwise making available information subject to Daniel's Law, including but not limited to the sources, methods, purposes, and recipients of such information.

**RPD NO. 5**: All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant.

**RPD NO. 14**: All documents reflecting or relating to Defendant's receipt of nondisclosure requests pursuant to Daniel's Law, including the date of receipt, the manner of receipt, the number of requests, the contents of those requests, and Defendant's analysis of those requests.

**RPD NO. 15**: All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs.

Along with other requests, Document Request No. 1(d) is incredibly vague, overbroad, unduly burdensome, and not proportionate to the needs of the case especially in relation to the jurisdictional discovery. As written, it could be construed to require production of every

18

document about Nuwber's business since its business is providing publicly available information about adult U.S. residents, including in New Jersey.  Interrogatory No. 10 also raises significant practical challenges and privacy concerns since it would require Nuwber to review every single Daniel's Law request it processed, then somehow recover the removed information if the information was not removed within ten (10) days from the date a person made a request, and then disclose to Plaintiffs the very same information about those people that those people plainly did not want disclosed.  Further, Document Request No. 14 makes little sense since it would require Nuwber to re-produce back to Atlas the thousands of Daniel's Law requests that Atlas previously sent Nuwber and that Atlas therefore already has.

Nuwber initially objected to these requests on multiple grounds, including because the requests do not address activities by Nuwber in New Jersey, *i.e.*, the requests are not relevant to the purposeful availment test.  Still, Nuwber's May 14, 2025 responses described that Nuwber has always made it easy for people to obtain removal of their information irrespective of any state law requirements.  Nuwber's May 14, 2025 responses explain "Defendant's website includes a "Remove My Info" page which may be found at https://nuwber.com/removal/link through which persons can request and cause their information to no longer be available on Defendant's website, and Defendant strives to make this process as simple and transparent as possible as shown at https://nuwber.com/faq."

In its supplemental responses, Nuwber provides additional information that explains how Nuwber responded to Daniel's Law requests, including the Atlas-related requests.  As to Interrogatory Nos. 9 and 10, Nuwber explains:

> [A]ll requests made by New Jersey persons who accessed the "Remove My Information" dashboard or otherwise made a Daniel's Law request, apart from Atlas-related requests, were removed within 10 days of receipt of the request.

19

As previously stated, all adult U.S. residents, not just persons covered by Daniel's Law, can easily obtain removal of their information by visiting https://nuwber.com/removal/link or by pressing the "Remove My Info" or "Do Not Sell My Info" hyperlinks on the front page of Defendant's website.  Provided that a person uses the removal feature, which provides Nuwber with sufficient information to identify the person who seeks to have their information removed, Nuwber is able to remove that person's information within twenty-four (24) hours.

With respect to Atlas-related Daniel's Law requests beginning December 22, 2023, Nuwber likewise acted with diligence and care, doing so because it respects personal privacy, wants to comply in full with all laws, and has no intent to expose anyone to harm.  However, the requests were not made through Nuwber's "Remove My Info" feature, Atlas emailed thousands of requests at a time, and a large number of the requests contained only a first and last name without sufficient identifying information.  Especially for a small company, this created an extraordinary practical and logistical challenge.

Accordingly, Nuwber sent several emails to Atlas email addresses including legal@atlasprotect.com,      hello@atlas.net,      privacy@atlas.net,      and support@atlas.net by which Nuwber requested cooperation and information from Atlas and its users so that Nuwber could properly respond to the requests, including by ascertaining the identity of the person making a Daniel's Law request.  An example of this correspondence is shown below.  Atlas and its users never responded.  As quickly and effectively as possible, Nuwber nevertheless removed information for New Jersey persons who shared a similar name, which should necessarily have included the person making the request.



Further, as to Document Request Nos. 1(d), 5, 14, and 15, Nuwber has explained:

> Nuwber will produce its email correspondence to Atlas emails addresses, including the requesting email address (all issued from the domain of @atlasmail.com), hello@atlas.net,    legal@atlasprotect.com,    privacy@atlas.net,    and support@atlas.net, by which Nuwber requested cooperation and information from

21

Atlas and its users so that Nuwber could better ascertain the identity of the person making a Daniel's Law request and thereby confirm that the correct person's information was being removed.

To be sure, Atlas already has all of the communications Atlas sent Nuwber, and Atlas already has all of the communications that Nuwber sent Atlas in return. Nevertheless, Nuwber is willing to re-produce all of the communications that Nuwber sent Atlas.

Nuwber's supplemental responses should resolve any legitimate issue as to this category of requests. Plaintiffs will have received more than sufficient personal jurisdiction discovery without requiring Nuwber to produce every single document about its business, the several thousands of Daniel's Law requests that Atlas already has, or information about people who expressly requested their information not be disclosed. This is not an intentional tort case, none of the requested documents concern any activities in New Jersey, and this near-limitless, merits-based discovery is not warranted under Rule 26(b)(1) or the *Calder* effects test.

### *Retention of Records*
### *(RPD No. 17)*

**RPD NO. 17:** All documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation, including without limitation records of every time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers of the Covered Persons and Individual Plaintiffs.

With its supplemental responses, Nuwber explains "Nuwber has preserved all documents that relate to the subject of this litigation." Since it appears that Plaintiffs' request is focused on confirming that Nuwber has done this, Nuwber's statement should moot the request.

## <u>CONCLUSION</u>

Plaintiffs' Motion to Compel is founded on a fiction, *i.e.*, that Plaintiffs' Complaint alleged intentional torts and therefore the *Calder* effects test provides personal jurisdiction. As this Court knows, Plaintiffs' Complaint alleged something different. But Plaintiffs' Motion to Compel has additional problems, as they do not address the requirements of Rule 26(b)(1) or

meaningfully examine *Hasson v. FullStory, Inc.* Plaintiffs also could never assert plausible facts to support that Nuwber intended to violate Daniel's Law or intended to harm any person. Nevertheless, Nuwber put these factual and legal issues aside and provided thorough and detailed responses to almost all of Plaintiffs' discovery requests. What remains is near limitless, merits-based discovery far beyond the scope of Rule 26(b)(1) and the bounds of jurisdictional discovery. For the foregoing reasons, Plaintiffs' Motion to Compel should be denied.


Date: July 14, 2025                          Respectfully submitted,

                                            By: */s/ Clair E. Wischusen*          
                                                 Clair E. Wischusen
                                                 **GORDON REES SCULLY MANSUKHANI, LLP**
                                                 290 W. Mt. Pleasant Ave.
                                                 Suite 3310
                                                 Livingston, NJ 07039
                                                 Tel.: (973)549-2500
                                                 Fax: (973) 377-1911
                                                 Email: cwischusen@grsm.com
                                                 *Attorney for Defendant Nuwber Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I caused a true and correct copy of the foregoing to be served via electronic mail to counsel for Plaintiffs.


                                            */s/ Clair E. Wischusen*          

                                            Clair E. Wischusen

23